**Gladys BROWN and Lucinda M. Brown, Plaintiffs,**

v.

**ROBYN REALTY CO., a corporation of the State of Delaware, et al., Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted May 11, 1976.

Decided Oct. 21, 1976.

Eric M. Doroshow, Staff Atty., Community Legal Aid Society, Inc., Wilmington, and Richard E. Blumberg, Berkeley, Cal., of counsel, for plaintiffs.

Lawrence M. Sullivan, of Sullivan, Hurley, Farnan & Falasca, Wilmington, for Robyn Realty Co., Patricia Dunn, Individually and Patricia Dunn, as Administratrix for the Estate of Robert Dunn.

Morton Richard Kimmel, of Kimmel, Spiller & Bradley, Wilmington, for J. P. McDowell.

TAYLOR, Judge.

I

Plaintiffs are tenants of apartments in Wilmington, Delaware who seek to recover damages from a landlord for alleged violations of the obligations imposed upon landlords by law. The defendants are the corporate owner of plaintiffs' apartments (plaintiffs rented separate apartments at the same address); the manager of the apartments; a former manager of the apartments; and the administratrix of the estate of a former manager who has died. Defendants have moved to dismiss on the ground that the complaints fail to state a cause of action. Because of the substantial identity of issues presented, the motions to dismiss are here considered together.

Plaintiff Lucinda Brown rented an apartment from defendants March 1, 1972, under an oral, month-to-month lease, at a monthly rental of $65. Except for the period from March 9, 1975 to April 11, 1975, she has lived in the apartment under the above arrangement continuously from March 1, 1972 to the present time. Plaintiff Gladys Brown rented an apartment from defendants from February 1, 1975 until April 1, 1975, also under an oral, month-to-month lease, at a monthly rental of $89.

The complaints allege four causes of action. The first seeks damages for defendants' failure, "wrongfully, knowingly, and perniciously," to supply a fit rental unit, as required by 25 Del.C. § 5303, plus punitive damages. The second seeks to recover for extraordinarily high gas bills which resulted from defendants' alleged failure to supply heat and hot water. The third cause of action seeks damages under 25 Del.C. § 5307 for failure to provide heat and hot water. The fourth prays for a return of the entire rental amount paid to defendants, on the theory that defendants' breaches relieved plaintiffs of their contractual obligations to pay rent. Two additional causes of action alleged in the original complaints have been voluntarily dismissed.

The complaints allege numerous defects in the rented apartments. Both allege an absence of heat and hot water and a prevalence of cockroaches, mice, and rats. In addition, the Gladys Brown complaint alleges a dangerously defective stove and oven; an inoperative refrigerator which was supplied by the landlord, a large water leak through the bathroom ceiling, and assorted violations of the Wilmington Housing Code, of which defendants were notified in a Violations Notice from the Housing Division of Wilmington's Department of Licenses and Inspections, dated April 4, 1975. The Lucinda Brown complaint also alleges a faulty electrical system, clogged plumbing, and numerous Housing Code violations, for which the apartment was declared "unfit for human habitation" in a Violation Notice dated June 9, 1975. According to the complaint Gladys Brown terminated the rental agreement upon proper notice because of the condition of the premises; and Lucinda Brown attempted to move from her apartment for the same reason, but that she was unable to find alternative lodging because of her impoverished situation and because of the unavailability of low-cost housing in Wilmington.

## II

Since September 27, 1972 a statute known as the Landlord-Tenant Code [Code] has been in effect in this State. 58 Del.Laws, Ch. 472.[1] The Lucinda Brown complaint covers the period beginning March 1, 1972. The period prior to September 26, 1972 antedates that Code. The entire period of the claim of Gladys Brown is subsequent to the Code. The initial discussion deals with the rights existing under the Code.

The Code provides that it "shall regulate and determine all rights, remedies, and obligations of the parties and beneficiaries of any rental agreement of a rental unit within this State, wherever executed." 25 Del. C. § 5103. As used in the statute, the term "rental agreement" includes an oral agreement. Hence, the provisions of the Code regulate the relationship of landlord and tenant entered into after September 26, 1972. Its applicability to the Lucinda Brown lease which originated before that date will be discussed later.

## III

Since the right of a tenant to recover from the landlord for defective or improper conditions in the leasehold is fundamental to the plaintiffs' causes of action, I shall discuss this aspect of the cases first, before considering the specific duties which the complaint alleges that defendant breached. It is sufficient for purposes of this portion of the opinion to recognize that 25 Del.C. § 5303 does impose certain duties upon the landlord with respect to the leasehold.

Plaintiffs contend that notwithstanding any other provision of the Code, they are entitled to the full scope of remedies by virtue of 25 Del.C. § 5510.[2] The section recognizes a right in "the injured party" to maintain a cause of action in court "[f]or any violation of the rental agreement, this code, or both, by either party." The placing of the section is unusual since it is located in a chapter which is captioned "Tenant Obligations and

---

1. The effect of the Delaware Landlord-Tenant Code is discussed in a comment in 78 *Dickinson Law Review* 723 (1974).

2. "§ 5510. Remedy for violation of agreement or code; attachment of wages to satisfy judgment.
 (a) For any violation of the rental agreement, this code, or both, by either party, the injured party shall have a right to maintain a cause of action in any court of competent civil jurisdiction.
 (b) In satisfaction of any judgment obtained by the landlord for rental arrearage or unlawful destruction of property, the wages of the judgment debtor may be attached in the manner provided by law."

Landlord Remedies". However, all of the provisions discussed in this opinion were adopted by Chapter 472, Volume 58, Laws of Delaware, under the title "An Act to Amend Titles 10 and 25 of the Delaware Code Relating to Landlord-Tenant Relationships". The provisions of the Act collectively are designated as the "Landlord-Tenant Code". An illogical or unexpected arrangement of the provisions of the Act does not affect the validity of the provision. 1A *Sutherland Statutory Construction* § 28.11. The placing of the section in a chapter whose caption reads "Tenant Obligations and Landlord Remedies" and with the section heading "Remedy for Failure to Pay Rent and for Destruction of Premises" does not render the section ineffective. Ibid, Vol. 2A, § 47.14. The wording of the section is clear that it assures judicial remedy for breach by either party. Absent ambiguity or doubtful meaning, there is no occasion for resort to constructional aids.

■ It is necessary to consider whether in the absence of statute the remedy of money damages for breach of a landlord's duties was available to a tenant. The proposition is generally accepted that where the landlord has breached an obligation under the lease, he may be found liable to the tenant for damages. 49 *Am. Jur.2d* Landlord and Tenant, pp. 200–1, §§ 776–7; 51C *C.J.S.* Landlord and Tenant, § 247(2), pp. 636–7. Annotations appearing at 28 *A.L.R.* 1450 and 28 *A.L.R.2d* 453 show that many states have accepted this proposition. *Powell on Real Property,* p. 126–7, § 234 lists six major factual circumstances under which the landlord may be held liable to the tenant for damages because of condition of the leased premises. One of these circumstances is the landlord's failure to perform his agreement to repair, and another circumstance is his failure to meet a statutorily imposed duty. See also, 3A *Thompson on Real Property,* pp. 189–99, § 1236; 2 *McAdam on Landlord and Tenant,* p. 1570, § 366.

■ This Court in *Schwartzman v. Wilmington Stores Co.,* Del.Super., 2 W.W. Harr. 362, 123 A. 343 (1924) recognized that a tenant may sue the landlord for damages resulting from the landlord's breach of his duties under a lease. This principle was applied in *Reeve v. Hawke,* 37 Del.Ch. 25, 136 A.2d 196 (1957). It was accepted but found to have been waived in *Richard Paul, Inc. v. Union Improvement Co.,* D.Del., 59 F.Supp. 252 (1945).

■ The authorities and cases cited above in general have dealt with duties imposed upon the landlord by the terms of the lease. The concept is that in this respect the rights and remedies of landlord and tenant are governed by the principles applicable to contracts. *Thompson on Property,* p. 186, § 1052.

■ Here, the duties upon which plaintiffs base their claims are of statutory creation. In general, violation of a statutorily imposed duty may be a valid basis for a claim for appropriate relief. Cf. *Speed v. Transamerica Corp.,* D.Del., 99 F.Supp. 808 (1951), aff'd. (3 Cir.) 235 F.2d 369 (1956); *Sullivan v. Little Hunting Park, Inc.,* 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969); *Walker v. Pointer,* D.Tex., 304 F.Supp. 56 (1969); *Texas & Pacific Railway Co. v. Rigsby,* 241 U.S. 33, 36 S.Ct. 482, 60 L.Ed. 874 (1916).

■ The Courts of this State have recognized that a cause of action may be founded upon violation of a duty created by statute or ordinance where the action is brought by a member of the class of persons for whose protection or benefit the statute was enacted. *Sammons v. Ridgeway,* Del.Supr., 293 A.2d 547 (1972); *Giles v. Diamond State Iron Co.,* Del.Super., 8 A. 368 (1887); *Schwartzman v. Weiner,* Del. Super., 319 A.2d 48 (1974). As noted above, *Powell on Real Property,* p. 126, § 234 recognizes that one basis for tenant's recovery of damages from a landlord is

failure of the landlord to discharge a statutorily imposed duty.

 While the Code does not specifically provide that its provisions shall be incorporated in future leases, it does provide that "the provisions of this code shall apply to all transactions (including renewals and extensions of pre-existing rental agreements) entered into thereafter." I conclude that the effect of the statute is to engraft the Code provisions upon subsequent rental agreements. The context of the Code is such that in various respects, it commingles or fails to differentiate between rights and obligations originating under the Code provisions and those originating under the rental agreement.[3] Cf. 25 Del.C. §§ 5103, 5104, 5112, 5301, 5304, 5305, 5306, 5307, 5501, 5503, 5504, 5505, 5507, 5508, 5509, 5510, 5512.

 The effect of § 5305 upon § 5510(a) must be considered. § 5305 provides for recovery of damages where the tenant has been deprived of a substantial part of the benefit and enjoyment of his bargain and the condition was caused wilfully or negligently by the landlord. A claim of the type described in § 5305 is encompassed within the broad language of § 5510. It is difficult to justify the presence of both sections. Both sections are permissive in nature. § 5305 does not by its terms restrict or prohibit actions not within the coverage of that section. The conclusion is that actions which are not covered by § 5305 and which are permitted under § 5510 are not precluded by the presence of § 5305 in the Code. No problem appears to exist with respect to statutory duplicity existing as to actions permitted by § 5305.

It is noted that in addition to the general remedy of damages provided in § 5305, the tenant is given certain direct and immediate remedies under §§ 5306 and 5307. § 5306 permits the tenant to have conditions corrected or repairs made at the landlord's expense and the tenant may deduct expenditures up to $50 from the rent provided advance notice has been given to the landlord. § 5307 permits certain rent abatement during any period when hot water heat or water is not supplied after notification to the landlord.

 Summary actions by the tenant permitted under §§ 5306 and 5307 afford the tenant the opportunity to resort to self help and to reduce the rent payment. These are permissive and not mandatory remedies. Nothing in the statute makes them exclusive remedies. Accordingly, they do not bar recovery of damages at least where the causes of action fall within § 5305 as well as § 5510. In view of the allegations in the complaints, I conclude that, subject to the matters hereinafter discussed, the allegations sufficiently assert a claim for damages under § 5305. Accordingly, it is not necessary to consider whether an action which qualifies under § 5510 alone but does not qualify under § 5305 will lie for damages. It is not necessary to consider here the nature and extent of damages to which plaintiffs may be entitled. Plaintiffs have argued at length for the adoption of the concept of retroactive rent abatement. Since this appears to be an application of the principle of damages, discussion of the concept is not required.

## IV—BREACH OF DUTY ALLEGED IN GLADYS BROWN COMPLAINT

25 Del.C. § 5303(a) imposes upon the landlord various duties with respect to the premises.[4] It is necessary to test the sev-

---

3. The Uniform Landlord and Tenant Relationship Act in § 1.102 contains a provision which is strikingly similar to 58 Del.Laws Ch. 472, Sec. 1, § 5102. The comment which accompanies § 1.102 of the Uniform Act shows an intention to apply contract law principles to the landlord-tenant relationship.

4. "§ 5303. Landlord to supply and maintain fit rental unit.
 (a) The landlord shall at all times during the tenancy:
 (1) Comply with all applicable provisions of any state or local statute, code, regulation or ordinance governing ‚the main-

eral breaches alleged in the complaints against this section.

Gladys Brown charges that the refrigerator was not functioning properly and that the stove and oven were dangerously defective and could not be safely used and that water leaked through a hole in the bathroom ceiling. This sufficiently alleges violations of § 5303(a)(5), which requires the landlord to "[m]aintain all electrical, plumbing and other facilities supplied by him in good working order."

The complaint alleges that there was no heat in the premises during the winter months and that there was no hot water in the premises. § 5303(a)(7) deals specifically with hot water and adequate heat, requiring them to be provided as reasonably required by the tenant "if the rental agreement so specifies." As the complaint is presently written, this statutory provision cannot serve as the proper foundation for this alleged breach of duty because the complaint does not allege that there was an undertaking by the landlord to provide heat and hot water. If plaintiff intends to rely on this provision, the complaint must be amended appropriately.

There is another consideration in connection with the allegation of lack of heat and hot water. § 5303(a)(1) requires the landlord to comply with applicable provisions of state or local codes, regulations or ordinances "governing the maintenance, construction, use or appearance of the rental unit and the property of which it is a part." The apartments which are the subject of these complaints are located in the City of Wilmington. They are subject to the Wilmington Housing Code [Housing Code], which was adopted by City Ordinance. *Wilmington City Code* §§ 34-1 to 34-82. The Housing Code applies to all dwelling units in the City of Wilmington.

The Housing Code at § 34-42(g) creates a duty upon the landlord to provide heat at specified temperatures where the rental is "on terms, either expressed or implied, to supply or furnish heat to the occupants." [5]

tenance, construction, use or appearance of the rental unit and the property of which it is a part;

(2) Provide a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants and is fit for the purpose for which it is expressly rented;

(3) Keep in a clean and sanitary condition all areas of his building, grounds, facilities and appurtenances which are maintained by the landlord;

(4) Make all repairs and arrangements necessary to put and keep the rental unit and the appurtenances thereto in as good condition as they were, or ought by law or agreement to have been, at the commencement of tenancy;

(5) Maintain all electrical, plumbing and other facilities supplied by him in good working order;

(6) If the rental agreement so specifies, provide and maintain appropriate receptacles and conveniences for the removal of ashes, rubbish and garbage and arrange for the frequent removal of such waste; and

(7) If the rental agreement so specifies, supply water, hot water and adequate heat as reasonably required by the tenant."

5. "(g) Same—Minimum temperatures. Every owner or operator of any dwelling who rents, leases or lets for human habitation any dwelling unit contained within such dwelling on terms, either expressed or implied, to supply or furnish heat to the occupants thereof, shall maintain therein a minimum temperature of seventy degrees Fahrenheit between the hours of 6:00 A.M. and 10:00 P.M. of each day and sixty degrees Fahrenheit between the hours of 10:00 P.M. and 6:00 A.M. of each day, whenever the outdoor temperature shall fall below fifty degrees Fahrenheit during the aforesaid hours. Whenever a dwelling is heated by means of a furnace, boiler or other heating apparatus under the control of the owner or operator of the dwelling, such owner or operator, in the absence of a written contract or agreement to the contrary, shall be deemed to have contracted, undertaken or bound himself to furnish heat in accordance with the provisions of this subsection to every dwelling unit which contains radiator, furnace heat duct outlets or other heating apparatus outlets."

The second sentence of § 34–42(g) injects into the rental agreement, "in the absence of a written contract or agreement to the contrary," an obligation to provide heat as specified in the subsection if the dwelling is heated "by means of a furnace, boiler or other heating apparatus under the control of the owner or the operator of the dwelling" and if the "dwelling unit contains radiator, furnace heat duct outlets or other heating apparatus outlets." In order for plaintiff to invoke this subsection, the complaint must show either (1) that the terms of the rental agreement included an express or implied undertaking that the landlord would supply or furnish heat to the rental unit or (2) that the building is heated by a furnace, boiler or other heating apparatus under the control of the landlord and that the rental unit contains a radiator, furnace heat duct outlets or other heating outlets.

■ The allegation that "[t]here was no heat in the premises during the winter months," although lacking detail, asserts a condition which is contrary to the heat requirements of § 34–42(g) of the Housing Code. However, the complaint lacks allegations which show the existence of either of the conditions discussed above upon which the landlord's duty under § 34–42(g) is contingent. Hence, the portion of the complaint with respect to heat as presently written does not set forth a cause of action founded on § 34–42(g) of the Housing Code.

The remaining specific charge of Gladys Brown is that "[c]ockroaches, rats and mice were prevalent throughout the premises." § 34–44(1) of the Housing Code provides:

"Pest Control. Every owner of a dwelling containing two or more dwelling units shall be responsible for the extermination of insects, rodents or other pests on the premises. Whenever infestation exists in two or more of the dwelling units in any dwelling, or in the shared or public parts of any dwelling containing two or more dwelling units, extermination thereof shall be the responsibility of the owner."

It is not necessary here to attempt to reconcile the two sentences of the provision.

■ The quoted Housing Code provision applies to a dwelling containing two or more dwelling units. The complaint does not allege that there are two or more dwelling units in the building. Since the issues involving the complaints of Lucinda Brown and Gladys Brown have been briefed together and the Court has both before it for simultaneous decision, the Court can consider the allegations of both complaints in connection with this provision. Each complaint alleges presence of the forbidden pests with respect to separate apartments in the same building. Hence, the allegations, if proved, sufficiently invoke § 33–44(1) and sufficiently allege a violation of that duty by the landlord.

■ Finally, Gladys Brown asserts that the Department of Licenses and Inspections of the City of Wilmington pursuant to inspection of her apartment on March 25, 1975 found numerous specified violations of the Housing Code and notified defendant of those violations on April 4, 1975. This sufficiently alleges a breach of defendant's duty under 25 Del.C. § 5303(a)(1).

■ In addition to the specific rental unit requirements of Chapter 53, Title 25, Delaware Code, the landlord is required by § 5303(a)(2) to "[p]rovide a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants and is fit for the purpose for which it is expressly rented."[6] These cases involve

6. It is noted that 6 Del.C. § 2–315 also contains a requirement that goods be fit for the required purpose. However, an analysis of the application of that statute would not be productive here.

rental of apartments to be used for living quarters. In general, the language quoted above can be equated to the concept of warranty of habitability for which plaintiffs argue. However, the application of the provision must depend upon a showing of the purpose for which the rental unit was expressly rented and upon a showing that the condition endangers the health, welfare or safety of the tenant or occupant. For purposes of this motion the complaint contains sufficient allegations to state a cause of action under § 5303(a)(2).

Plaintiffs cite various states which have applied a common law theory of warranty of habitability notwithstanding statutory regulation of landlord-tenant relations. An examination of the cases cited by plaintiffs shows that those statutes did not have a provision such as § 5103 purporting to provide the exclusive rights and remedies of landlords and tenants.

■ The device of implying the existence of a duty comes into operation only where there is no express duty. Since there exist under Chapter 53, Title 25, Delaware Code, express duties encompassing the subject of these complaints, it is not necessary to consider whether an implied duty can exist in the light of the statute.

## V—BREACH OF DUTY ALLEGED IN LUCINDA BROWN COMPLAINT

The Lucinda Brown complaint involves a tenancy which commenced March 1, 1972, prior to the Landlord-Tenant Code. Section 3 of the Act which enacted the Code provides:

"Section 3. Upon its enactment into law, the provisions of this code shall apply to all transactions (including renewals and extensions of pre-existing rental agreements) entered into thereafter; provided, however, that any rights, obligations or remedies not expressly dependent by the provisions of this code upon the terms of a rental agreement ■

shall become effective immediately." 58 Del.Laws Ch. 472.

■ I conclude that the Landlord-Tenant Code is applicable to this tenancy from its effective date of September 27, 1972 for two reasons. Since the lease is alleged to be an oral month-to-month lease, it renewed itself for a further month at the expiration of each month. By its terms the Code applies to renewals and extensions of pre-existing leases. Furthermore, rights, obligations and remedies under the Code other than those which the Code expressly makes dependent upon the terms of a rental agreement became applicable on September 27, 1972. With the exception of paragraph (7) of § 5303(a), none of the provisions of § 5303(a) is made dependent upon terms of a rental agreement.

■ This complaint also alleges presence of pests, no heat and no hot water. Similar allegations have been discussed in connection with the Gladys Brown complaint and the considerations and conclusions reached there are applicable here. This complaint also alleges faulty electrical wiring and a clogged sink bowl. The allegations appear to set forth violations of the landlord's duties under 25 Del.C. § 5303(a)(5).

## VI

■ Defendant contends that certain of plaintiffs' claims are barred by failure of the violation notice of the Wilmington Department of Licenses and Inspections to list those items as violations. For this position, defendant relies on 25 Del.C. § 5309 which provides that "[e]vidence of compliance with an applicable housing code shall be prima facie evidence that the landlord has complied with this chapter . . .". It will be noted that the section refers to *prima facie* evidence. By definition it is rebuttable. *Black's Law Dictionary*, pp. 1353–4; *Ballentine's Law Dictionary*, p. 987. It does not preclude evidence which

might contradict the prima facie evidence. Ibid. Hence, plaintiffs are not precluded from asserting their claim at the pleading stage and presenting evidence of violation assuming without deciding that defendants may be entitled to the benefit of § 5309 arising from the absence of such items from the violation notice.

## VII

By way of summary:

■ With respect to the Gladys Brown complaint—the second and third causes of action of the complaint which seek recovery based on 25 Del.C. § 5307 (erroneously designated as 12 Del.C. § 5307 in the prayer of the second cause of action), fail to state a cause of action entitling plaintiff to relief requested because they fail to allege notice to the landlord as required by § 5307.

■ The second cause of action, which alleges that failure to supply heat and hot water and asserts violation of 25 Del.C. § 5305 and § 5307, also fails to state a cause of action since § 5305 does not deal with an obligation to provide heat and hot water and, as has been noted above, the complaint does not show compliance with § 5307.

■ The fourth cause of action which seeks recovery based on 25 Del.C. § 5112(a) fails to state a cause of action entitling plaintiff to the relief requested be-

cause § 5112(a) sets forth no duty and provides for no relief.

Accordingly, the motion to dismiss the Gladys Brown complaint is granted as to the second, third and fourth causes of action, with leave granted to amend within twenty days from the date hereof. The motion is denied as to the first cause of action.

Plaintiffs have stated in their brief that the fifth and sixth causes of action have been voluntarily dismissed.

With respect to the Lucinda Brown complaint—the second and third causes of action are vulnerable for the reasons discussed in connection with the third cause of action in the Gladys Brown complaint because of the reliance on § 5307 and the failure to show compliance therewith.

The fourth cause of action is subject to the same defect discussed in connection with the fourth cause of action in the Gladys Brown complaint because of the reliance on § 5112(a).

Accordingly, the motion to dismiss the Lucinda Brown complaint is granted as to the second, third and fourth causes of action, with leave to amend within twenty days from the date hereof. The motion is denied as to the first cause of action.

Plaintiffs have stated in their brief that the fifth and sixth causes of action have been voluntarily dismissed.

IT IS SO ORDERED.