# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

CURDALE BLEDMAN,                )
                               )
    Defendant-Below/Appellant,  )
                               )
    v.                          )      Case No. CPU4-22-000379
                               )
CONWELL PETTY,                  )
                               )
    Plaintiff-Below/Appellee.   )

Submitted: September 21, 2022
Decided: October 31, 2022

Curdale Bledman                        Conwell Petty
45 Fairway Road                        50 Buttonwood Ave
Newark, DE 19711                       New Castle, DE 19790
*Pro Se*                               *Pro Se*

## DECISION AFTER TRIAL

**Surles, J.**

This is an appeal *de novo* brought under 10 *Del. C.* § 9570 *et. seq.* from a decision of the Justice of the Peace Court dated February 22, 2022. Plaintiff-Below/Appellee Conwell Petty's claims against Defendant-Below/Appellant Curdale Bledman stem from a residential lease agreement which, Mr. Petty alleges, Mr. Bledman breached by failing to pay rent and utilities, resulting in damages of $9,671.00.

A bench trial was held on September 21, 2022, during which the Court heard testimony from three witnesses,[1] and received documents into evidence.[2] At the conclusion of the trial, the Court reserved decision. This is the Court's Final Decision After Trial.

## FACTS

Based on the testimony and evidence presented at trial, the Court finds the following relevant facts:

On May 3, 2019, the parties executed a residential lease agreement (the "Lease"), pursuant to which Mr. Bledman rented Mr. Petty's two-bedroom townhouse in New Castle, Delaware (the "Property") at a rate of $850 per month, plus all utilities.[3]

---

[1] Conwell Petty testified during his case-in-chief; Curdale Bledman and his significant other, Christine Flores, testified for the defense.

[2] Defendant's Exhibits 1-7 were admitted into evidence.

[3] Def. Ex. 2.

2

For the next two years, Mr. Bledman paid rent "occasionally," and by May 2021 he was delinquent on payments.[4] The last payment Mr. Bledman rendered was on May 23, 2021, in the amount of $893.00.[5] Thereafter, he ceased making rent payments entirely, but continued to live in the Property. In addition, Mr. Bledman did not make any payments for gas, which was explicitly called for in the Lease.

During Mr. Bledman's tenancy, he complained to Mr. Petty about maintenance-type issues that arose on the Property. In the summer of 2021, he notified Mr. Petty about damage to the floor, as well as pest and mold issues. In August 2021 (at which point, Mr. Bledman had not paid rent for multiple months) a bathroom pipe burst. In response, Mr. Petty sought access to the Property to evaluate what repairs were necessary but,[6] as evidenced by text messages between the parties, Mr. Bledman was less than cooperative. Neither party offered testimony or documentary evidence as to the outcome of Mr. Petty's efforts to access the Property to observe the alleged damage therein.[7]

Given Mr. Bledman's failure to make rental payments, Mr. Petty undertook efforts to evict him starting in September 2021.[8] On December 3, 2021, Mr. Petty

---

[4]  The precise extent of the delinquency was unclear. Mr. Petty did not offer any testimony or documentary evidence to establish which months were unpaid and/or paid late.

[5]  Def. Ex. 1. While this rent check was more than the contractually obligated $850, neither party established why this rent check contained an additional $43.00.

[6]  Def. Ex. 3.

[7]  Def. Ex. 3. Text massages show Mr. Petty's efforts to access the property, but neither party offered testimony or documentary evidence to demonstrate whether Mr. Petty ultimately accessed the Property to evaluate and repair the damage.

[8]  Def. Ex. 5.

3

filed a summary possession/debt action in the Justice of the Peace Court. Finally, in January 2022, Mr. Bledman vacated the premises, but Mr. Petty pursued his claim for unpaid rent in the Justice of the Peace Court, the outcome of which was appealed to this Court.

## STANDARD OF REVIEW

The applicable statute regarding the standard of review for appeals from the Justice of the Peace Court, 10 *Del. C.* § 9571, specifies that appeals from the Justice of the Peace Court to the Court of Common Pleas shall be "*de novo.*"[9] A *de novo* review means that the reviewing court considers all facts and law anew, as if the proceedings below did not occur.[10]

## DISCUSSION

To prevail on a claim for breach of contract, the plaintiff must demonstrate: "(1) the existence of a contract; (2) that defendant breached an obligation imposed by the contract; and (3) that plaintiff incurred damages as a result of breach."[11] It is incumbent on the plaintiff to prove each element by the preponderance of the evidence.[12] Similarly, the defendant bears the burden of proving any affirmative

---

[9] 10 *Del. C.* § 9571; *see Wilson v. Delmarva Power and Light Co.*, 2020 WL 7024489, at *3 (Del. Com. Pl. Nov. 30, 2020).

[10] *Dean v. Thoro-Good's Concrete Co., Inc.*, 1997 WL 1737107, at *1-2 (Del. Com. Pl. March 25, 1997).

[11] *Id.*; *see also Oster v. Clemow*, 2011 WL 3849669, at *1 (Del. Com. Pl. Aug. 8, 2011); *Sullo v. Kousournas*, 2010 WL 718666, at *6 (Del. Super. Feb. 3, 2010). .

[12] *Sullo v. Kousournas*, 2010 WL 718666, at *6 (Del. Super. Feb. 3, 2010).

defenses raised by the preponderance of the evidence.[13] "Proof by a preponderance of the evidence means proof that something is more likely than not."[14] As finder of fact, the Court must weigh the credibility of witnesses and "find in favor of the party upon whose side the greater weight of the evidence is found."[15]

Here, it is undisputed that a residential lease agreement existed between the parties. It is also undisputed that Mr. Bledman breached that agreement by failing to make payments for rent and gas. At trial, Mr. Petty asserted that, as a result of that breach, he suffered damages totaling $9,671.00, for 11 months of unpaid rent, plus unpaid gas and electric bills. On the other hand, Mr. Bledman maintained that he tendered all rental payments through May 2021, and he intimated that his non-payment from June 2021 through January 2022 was justified due to the living conditions of the Property.

## I. Remedies Available For Conditions On The Property Under The Landlord-Tenant Code

Residential leases within the State of Delaware are governed by Delaware's Landlord-Tenant Code (the "Code"). Section 5305 of the Code contains a provision tantamount to an implied warranty of habitability, requiring the landlord to "provide

---

[13] *Stone & Paper Investors, LLC v. Blanch*, 2021 WL 3240373, *16 (Del. Ch. July 30, 2021); *Capital One Bank (USA), N.A. v. Altemus*, 2013 WL 12199420, at *2 (Del. Com. Pl. May 20, 2013).

[14] *Del. Express Shuttle, Inc.*, 2002 WL 31458243, at *17 (quoting Del.Super. P.J.I. Civ. § 4.1 (2000)).

[15] *D.W. Burt Concrete Construction, Inc. v. Dewey Beach Enterprises, Inc.*, 2016 WL 639653, *2 (Del. Super. Feb. 17, 2016)(citing *Patel v. Patel*, 2009 WL 427977, *3 (Del.Super. Feb. 20, 2009)); *See Johnson v. State*, 929 A.2d 784 (Del.2007).

5

a rental unit which shall not endanger the health, welfare or safety of the tenants or occupants and which is fit for the purpose for which it is expressly rented."[16] The Code also delineates specific remedies available to a tenant in instances where the landlord fails to satisfy such statutory obligations including, in certain limited circumstances, the withholding of rent.[17] Section 5307(a) provides that, where a landlord fails to timely act upon written notice of a defect or damage on the premises, the tenant may effectuate repairs and deduct costs incurred from the rent.[18] Importantly, such remedy is not available to a tenant "who is otherwise delinquent in the payment of rent."[19]

In the present case, the record is sparse with regards to the timing, extent, and written notifications of problematic conditions on the Property. Mr. Bledman broadly asserted that the Property was in an uninhabitable condition due to bugs, mold, and pipe damage. The Court finds that the veracity of his testimony is tenuous at best, but even if it were credible it would not provide a legal bases for his withholding of rent. The only evidence adduced at trial of any written communications regarding conditions on the Property was text messages between

---

[16] 25 *Del. C.* § 5305(a)(2); *Brown v. Robyn Realty Co.*, 367 A.2d 183, 192-193 (Del. Super. Oct. 21, 1976)(noting the language in 5305(a)(2) "can be equated to the concept of warranty of habitability").
[17] 25 *Del. C.* § 5307(a) provides that, in certain limited circumstances, a tenant may deduct costs incurred to repair or maintain the property if the landlord fails to timely act upon written notice of a defect on the premises
[18] 25 *Del. C.* § 5307.
[19] 25 *Del. C.* § 5307(c).

6

the parties from August 2022. By Mr. Bledman's own account, he had already ceased making rental payments at that time. Since Mr. Bledman was delinquent on the payment of rent, his withholding of rent was not sanctioned under §5307.[20]

## II. Damages

To satisfy the final element of his claim (damages), Mr. Petty must demonstrate, by the preponderance of the evidence, "the existence of damages provable to a reasonable certainty."[21] Damages need not be proven with mathematical precision, but "a plaintiff must demonstrate that the defendant caused the injury and present a reasonable and factually supported basis for determining damages."[22]

Mr. Petty seeks to recover damages for a total of 11 months of rent plus unpaid gas and electric charges. His claim for rent is broken down into two time periods: (i) five months from the initiation of eviction proceedings in September 2021 through January 2022, when Mr. Bledman vacated the Property, and (ii) six months for missed payments occurring before September 2021.

Certainly, it is clear from the record that Mr. Petty has satisfied his burden of proof with regards to rental payments for a period of eight months, from June 2021 through January 2022; by all accounts, Mr. Bledman resided at the Property without

---

[20] Even if he were not deficient, there is no evidence in the record to suggest that Mr. Petty failed to remedy the conditions complained of or "fail[ed] to initiate reasonable corrective measures" within 10 days of Mr. Bledman's written notice. Therefore, even if he were not already delinquent in rental payments, Mr. Bledman would not be entitled to withhold rent.

[21] *LaPoint v. AmerisourceBergen Corp.*, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007);

[22] *Medek v. Medek*, 2009 WL 2005365, *12 (Del. Ch. July 1, 2009).

7

making any rental payments during that period. What is less evident is whether Mr. Petty proved, by the preponderance of the evidence, that Mr. Bledman was three months delinquent when he made his final rental payment in May 2021. Mr. Petty did not point to any evidence to corroborate his estimate; he did not produce documentation of the dates upon which Mr. Bledman did (or did not) pay rent, or any written notices of delinquency. The Court finds that he did not prove, by the preponderance of the evidence, that Mr. Bledman owed three months of rent prior to his May 2021 payment. Therefore, Mr. Petty is entitled to damages for $6,800.00.[23]

Mr. Petty also seeks to recover damages for unpaid electric ($60) and gas ($800) bills. There is no dispute as to the unpaid gas bill; Mr. Bledman admitted that he did not pay the required amount. However, the Court finds that Mr. Petty failed to prove, by the preponderance of the evidence, damages for unpaid electric bill(s).

---

[23] This figure represents eight months of rent calculated at a rate of $850 per month.

8

## CONCLUSION

For the foregoing reasons, the Court enters judgment in favor of Plaintiff-Below/Appellee Conwell Petty and against Defendant-Below/Appellant Curdale Bledman in the amount of $6,750.00 for delinquent rent and gas bills.

**IT IS SO ORDERED.**

Robert H. Surles,
Judge