# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

JESSICA FLAGLER,                              )
                                             )
   Defendant-Below / Appellant,           )
                                             )
     v.                                  )   C.A. No.: CPU4-25-001289
                                             )
COURTNEY HILL and,                            )
BAILEY INGERSOLL                              )
                                             )
   Plaintiffs-Below / Appellees.           )

Submitted: October 28, 2025
Decided: November 13, 2025

## DECISION AFTER TRIAL

Jessica Flagler, *Self-Represented Appellant*.

Courtney Hill and Bailey Ingersoll, *Self-Represented Appellees*.

**Manning, J.**

This is an appeal from a Justice of the Peace Court decision dated February 26, 2025.[1] The dispute in this matter concerns a security deposit, paid to Defendant-Below/Appellant Jessica Flagler[2] ("Landlord") by Plaintiffs-Below/Appellees, Courtney Hill and Bailey Ingersoll, ("Tenants") as part of their tenancy in Landlord's property at 312 Olga Road, Wilmington, DE 19805 (the "Property"). Tenants allege that Landlord wrongfully retained their $970 security deposit at the conclusion of their tenancy. Not surprisingly, Landlord disagrees; she alleges that the security deposit was properly withheld in accordance with the Delaware Landlord Tenant Code.

On October 28, 2025, this Court held a trial *de novo* on the matter. The evidence consisted of testimony from Landlord; Landlord's husband, Timothy Flagler; Tenants; and hardwood floor expert, Jim Kramer. Further, both parties submitted exhibits for the Court's consideration. This is the Court's decision after trial.

## **RELEVANT PROCEDURAL HISTORY**

Landlord initiated this appeal on March 7, 2025, by filing a Notice of Appeal in this Court. Landlord improperly attached to the Notice of Appeal a complaint in

---

[1] 10 *Del. C.* § 9571.

[2] Although the case originally included both Landlord and her husband, Timothy Flagler, the Court dismissed Timothy Flagler from the case at trial because, during the relevant period, Mr. Flagler was not married to Landlord, was not on the Property's deed and, by Tenants own account, did not otherwise act in a landlord capacity.

which she demanded an award of $970 for the amount of Tenants' security deposit, plus an additional $830 for "repair costs." However, as the Court explained at trial, this complaint was legally ineffective as *CCP Civil Rule* 72.3(b) and (f)—which govern appeals from the Justice of the Peace Court brought pursuant to 10 *Del. C.* § 9571—the same issues must be raised on appeal as were asserted below by the plaintiff-below filing the complaint on appeal. In this case, Tenants were the plaintiffs below, thus Landlord's complaint was of no legal effect.[3] Tenants' valid Complaint on Appeal was filed On April 2, 2025.

On August 25, 2025, Tenants filed an Amended Complaint, which restated their initial complaint's assertions and sought additional damages for parking, certified mail, wage garnishment fees, subpoena fees, and lost wages for both Tenants, totaling $729.25. However, as Landlord had already filed an Answer, *CCP Civ. R.* 15 requires Tenants to seek leave of court prior to filing any amended complaint, and they failed to do so. As such, the additional claims raised in Tenants' Amended Complaint did not proceed to trial.

## FACTS

The parties entered an oral agreement whereby Tenants rented the Property from Landlord commencing March 2022. Pursuant to the oral agreement, Tenants

---

[3] To be effective, Landlord's request for additional damages should have been filed as a counterclaim once the Complaint on Appeal was filed.

furnished a security deposit of $970. At the conclusion of the tenancy on April 28, 2024, Tenants were disappointed to learn that Landlord would not return their security deposit because she believed that damage to the hardwood floor in the entryway exceeded normal wear and tear. At this point, the once-pleasant relationship between the parties soured; by the day of trial, the acrimony between the parties was palpable. While both parties testified to a litany of perceived slights committed by the other, this Court's decision is limited only to the evidence pertaining to the sole issue at hand: if the damage to the hardwood floors exceeded normal wear and tear.

It is undisputed that the entryway flooring bore no damage when Tenants assumed possession. It is also undisputed that, when Tenants vacated the Property, visible markings on the entryway flooring were left in their wake. To establish whether that damage exceeded normal wear and tear, both parties relied on the testimony of hardwood flooring expert Jim Kramer.[4]

Mr. Kramer defined "normal wear and tear," as "not typically anything that gouges the wood or puts in deep scratches." Referring to photographs of the post-tenancy Property flooring, he described the damage as "not normal wear and tear,"

---

[4] Mr. Kramer is the owner of Delaware Valley Hardwoods and has been in the wood flooring business for 30 years. He had been a member of the National Wood Flooring Association for 18 years as a Certified Advanced Master Craftsman as well as an Inspector. He explained that his wife—not himself—evaluated the floor and provided the estimate, and that he had never personally seen The Property's floors in person. However, when analyzing photographs provided to him at the witness stand, Mr. Kramer was able to testify regarding the condition of the floor.

but rather "damage" to the floor. According to Mr. Kramer, exotic woods—like the one in The Property—are "typically very dense woods and it takes a lot of wear in one area for [damage] like this to happen." He speculated that the damage likely originated from wetness in the floor which caused the wood to "swell," thus making it more susceptible to damage in high traffic areas.[5]

Mr. Kramer also testified as to the necessary repairs and associated costs to remedy the floor. Specifically, he testified that the wood in the entryway is "an exotic species," possibly "Brazilian Walnut or something similar." He explained that with this type of exotic wood floor, it would be impossible to fix the damage without refinishing the entire floor, because "once you touch one board . . . the color will be drastically different, so the whole floor has to be refinished together for an acceptable appearance."[6] He explained that the minimum estimated cost for his company, Delaware Valley Hardwoods, to refinish floors was $1,800.

## DISCUSSION

It is clear from the evidence adduced at trial that the flooring bore little to no noticeable damage when Tenants moved in, and damage to the entryway flooring was visible upon Tenants' departure. Thus, the issue before the Court is whether

---

[5] Mr. Kramer also noted damage from something known in the flooring industry as "wind shake" which presents in wood that experienced bending while still a tree. This bending causes "delamination in the grain" within the tree, which can make the floor more susceptible to swelling if exposed to moisture. He identified one instance of "wind shake" in the flooring, and he did not describe that piece of damage as beyond normal wear and tear.
[6] *Id.* At 10:44 am.

Tenants caused damage to the Property which exceeded normal wear and tear and, if so, whether the cost to repair such damage meets or exceeds the security deposit.

As an initial matter, the Delaware Landlord Tenant Code (the "Code") applies to both landlords and tenants, regardless of whether the rental agreement is written or oral.[7] In an action for damages under the Code, the burden is on the plaintiff to prove the alleged damages—or lack thereof—by a preponderance of the evidence.[8]

The Code permits a landlord to "require the payment of security deposit,"[9] the purpose of which is, among other things, to "reimburse the landlord for actual damages caused to the premises by the tenant which **exceed normal wear and tear**, or which cannot be corrected by painting and ordinary cleaning."[10] "Normal wear and tear is defined as 'the deterioration in the condition of a property or premises by the ordinary and reasonable use of such property or premises.'"[11] If it is shown "that damages could only be remedied by repairs above and beyond normal wear and tear,

---

[7] See 25 Del. C. § 5101(a) ("This Code shall regulate and determine all legal rights, remedies and obligations of all parties and beneficiaries of any rental agreement of a rental unit within this State, wherever executed. Any rental agreement, whether written or oral, shall be unenforceable insofar as the agreement or any provision thereof conflicts with any provision of this Code, and is not expressly authorized herein. The unenforceability shall not affect other provisions of the agreement which can be given effect without the void provision.") See also Brown v. Robyn Realty Co., 367 A.2d 183, 188 (Del. Super. Ct. 1976) ("As used in the statute, the term 'rental agreement' includes an oral agreement.").

[8] Leipold and Mangels v. Melgarejo, Del. Com. Pl., Ca. No. CPU4-13-000349 at 5, Smalls, C.J. (April 30, 2014); Holveck v. Christiana Meadows Apartments, 2022 WL 1490397 (Del. Com. Pl. May 11, 2022).

[9] 25 Del. C. § 5514(a).

[10] 25 Del. C. § 5514(c)(1) (emphasis added).

[11] Z-Man Propoerties, LLC v. Garrity, 2014 WL 3534976, at *5 (Del. Com. Mar. 7, 2014) (quoting 25 Del. C. § 5141(19)).

landlord can use the security deposit to cover the costs associated with repairs of such actual damages."[12]

### A. *Damage to the floor exceeded normal wear and tear*

The testimony of the sole expert witness at trial, Mr. Kramer, is dispositive on the issue of wear and tear to the flooring. Referring to the photographs in evidence of the damage to the flooring, Mr. Kramer testified that the depicted damage was beyond what he would consider typical wear and tear. The Court finds Mr. Kramer's testimony credible. Mr. Kramer was the lone expert in this case and testified for both parties. Neither party provided an alternative expert, and neither party attacked Mr. Kramer's credibility nor provided the Court any reason to doubt his expertise. Accordingly, I find that the damage to the hardwood floor in the entry way of the property was beyond normal wear and tear.

### B. *The cost to repair*

The cost to reimburse injured parties in landlord-tenant disputes is an issue considered previously by this court. In *Leipold and Mangels v. Melgarejo*, the Court stated that "an adequate legal remedy may be found in the form of damages based upon contract law."[13] The Court in that matter held that "'[t]he measure of damages

---

[12] Ca. No. CPU4-13-000349 at 5, Smalls, C.J. (April 30, 2014).
[13] *Id.* at 15.

is the loss actually sustained as a result of the breach of contract.'"[14] It stated, "'[o]ne who is injured by the breach of a contract is entitled to compensation for the injury . . . compensation should be such as will place him in the same position that he would have been in if the contract had been performed.'"[15] The landlord in that case was awarded the full cost to repair the damage to its property—above the value of the security deposit.[16]

Again, Mr. Kramer's expert testimony is the sole barometer available to the Court by which damages can be measured. He explained that when dealing with an exotic wood such as the one in the entry way of the Property, individual board replacement or repair is not a feasible solution because the color difference on the affected boards following repair would be too vast. It was Mr. Kramer's expert opinion that the only way to repair the floor would be to refinish the entire entry way—an endeavor which would cost an estimated $1,800.[17]

Notably, the estimated cost to repair ($1,800) far exceeds the security deposit ($970). However, as previously discussed, Landlord's effective filings do not state

---

[14] *Id.* (quoting *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892, 894 (Del. Super. 1954)).

[15] C.A. No.: CPU4-13-000349 at 15 (quoting *J.J. White, Inc. v. Metropolitan Merchandise Mart*, 107 A.2d 892, 894 (Del. Super. 1954)).

[16] *Id.* at 16.

[17] The Court notes that Landlord also introduced evidence of cost to repair by way of additional estimates. However, those estimates came from a time after succeeding tenants assumed possession of The Property, meaning the condition of the floor could have been altered since Tenants vacated The Property. Moreover, all proffered estimates exceeded $970 and, as discussed herein, damages cannot be awarded beyond the security deposit.

8

a counterclaim for damages beyond the retained security deposit. The only amount at issue here is the $970 security deposit retained by Landlord.

## CONCLUSION

For the above reasons, the Court finds that Tenants have not proven by a preponderance of the evidence that they incurred damages as a result of Landlord withholding their security deposit. Accordingly, Landlord is entitled to the entire $970 at issue. An appropriate order will issue.

Bradley V. Manning
Judge

# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

JESSICA FLAGLER, )
)
    Defendant-Below / Appellant, )
)
    v. )    C.A. No.: CPU4-25-001289
)
COURTNEY HILL and, )
BAILEY INGERSOLL )
)
    Plaintiffs-Below / Appellees. )

## ORDER

AND NOW, on this 13th day of November 2025, JUDGMENT IS HEREBY entered in favor of Jessica Flagler against Courtney Hill and Bailey Ingersoll in the amount of $970.00, plus post-judgment interest at the legal rate.

**IT IS SO ORDERED.**

_____
Bradley V. Manning
Judge